## Griffith's Estate.    Nagle's Appeal.

*Trusts and trustees—Board and maintenance.*

A trustee who took into his family to board the cestui que trust who was his half brother, and an imbecile and invalid, is entitled to a reasonable credit in his account for board and maintenance, where the cestui que trust had an ample estate for his support, but needed personal attention and care.

*Allowance for board of a nurse.*

In such a case it is also proper to allow the trustee credit for the board of an aunt of the cestui que trust who had long acted as his nurse, and whose services were absolutely necessary for his health and comfort.

*Interest—Investing trust funds.*

A trustee should not be charged with interest from the date of the receipt of the moneys, but only from a reasonable time elapsed thereafter, and only upon balances of cash unnecessarily kept in hand.

*Payments for support of cestui que trust out of principal.*

Where a deed of trust does not provide either expressly or by necessary implication that the sums necessary for the support of the cestui que trust should be paid exclusively out of income, such sums may be paid out of the principal.

Argued Jan. 11, 1892. Appeal, No. 33, July T., 1891, by Mary A. G. Nagle, from decree of C. P. No. 4, Sept. T., 1876, No. 219, dismissing exceptions to an auditor's report. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

On January 13, 1890, the account of Andrew J. Griffith, trustee of the estate of James C. Griffith, was referred to George O. Horwitz, Esq., as auditor. From the testimony taken before the auditor, the facts appeared as stated in the opinion of the court below.

The accountant filed the following exceptions to the auditor's report:

" 3. The learned auditor erred in finding that under the deed of trust the trustee had no right to apply the corpus of the estate towards the maintenance of the cestui que trust, but enjoyed only the power ' to receive the rents, issues and profits of the said property granted by the will of his father aforesaid, and all of his other property, and pay to the said James C. Griffith such sum or sums as may be necessary, in the judgment of the said Louisa C. Griffith, for the comfortable and proper maintenance and support of the said James C. Griffith.'

" 4. The learned auditor erred in finding: *First.*—That the trustee should be surcharged with all the principal moneys received from this estate, and which he had no right to touch. *Second.*—That interest should be calculated thereon at the rate of six per cent per year from the date that each sum came into his hands.

" 5. The learned auditor erred in disallowing the credit of $4,374.01, claimed by the trustee for the board and washing of Miss Clevenger.

" 8. The learned auditor erred in finding that there was absolutely no evidence that James C. Griffith expected, wished or knew that he was paying for his aunt's board or washing."

THAYER, P. J. filed the following opinion:

" On May 10, 1866, James C. Griffith, for the reason recited in the deed of trust which he then executed, viz., that he felt himself to be feeble both in mind and body, and was apprehensive that his estate, if managed by himself, might be wasted and lost, granted and conveyed his said estate, which at that time appears to have been of the value of about eleven or twelve thousand dollars, to his mother, Louisa C. Griffith (his father being then dead) in fee. In trust, however, that she receive the rents and profits, and collect all outstanding claims and debts, invest and reinvest the same at her pleasure, and, after deducting her reasonable costs and charges, shall pay to the said James C. Griffith, each and every year, and as often as he may need the same, such sum or sums as may be necessary, in the judgment of the said Louisa C. Griffith, for the comfortable and proper maintenance of the said James C. Griffith, and invest the residue that may be in her hands in such manner as in her judgment may be most advantageous for the said James C. Griffith, the property on his death to be subject to his disposal by last will and testament, and in default thereof to go to his heirs-at-law.

" Louisa C. Griffith, the mother and trustee of James C. Griffith under this deed, died in 1870, and thereupon James Morrell, Jr., was appointed trustee in her stead. He acted as trustee until his death, September 23, 1876, and thereupon Andrew J. Griffith, a half brother of James C. Griffith, became trustee, and acted in that capacity until the death of James C. Griffith, the cestui que trust, in April, 1888. Andrew J. Griffith, the trustee, himself died before the settling of his account as trustee, and the account which is now the subject of examination was filed by his executrix, Mrs. Jemima Griffith. James C. Griffith having died intestate, his only heirs were Andrew J. Griffith (who had been his trustee) and Mrs. Mary A. G. Nagle. They became entitled to his estate in equal proportions. The trust, it will be perceived, began in May, 1866, and ended with the death of the cestui que trust, in April, 1888. It lasted, therefore, nearly twenty-two years, dur-

ing eleven and a half of which years the accountant, Andrew
J. Griffith, was the trustee.

" On the settlement of the trust account of Andrew J.
Griffith before the auditor, several items of credit which were
claimed were objected to by the counsel for Mrs. Nagle. It
was claimed that the trustee was not entitled to be credited
with the amount charged for the board and maintenance of
the cestui que trust. The auditor reported that the sum
charged by the trustee was reasonable and just, and allowed
it. In this we think the auditor was clearly right. It was
argued before us that the deed of trust did not authorize the
trustee to support the cestui que trust, but only to pay him
such sums of money as might be necessary for his comfortable
support. We are not impressed with the force of this argu-
ment. James C. Griffith resided with the trustee. He had an
estate of his own, and there is no evidence whatever to show
that he expected to live at the expense of the trustee. The
latter was under no obligation whatever to maintain him at
his own cost, nor does the family relation give rise to any pre-
sumption that his half brother, the trustee, undertook to
maintain him as an act of charity. He did not stand in need of
such charity, certainly, having property sufficient to pay for
his own board and living. He did stand greatly in need of
the trustee's care and attention, being an invalid and imbecile,
and it was for that reason that the trustee took him into his
own family to live with him, in order that he might protect
and care for him and minister to his wants and necessities.
But it would be absurd to suppose that with an estate suffi-
cient to maintain himself he expected to be supported at the
expense of the trustee. There is no evidence of any such un-
derstanding on the part either of the trustee or the cestui que
trust. There is nothing in this case whatever to rebut the
presumption of an implied contract and obligation on the part
of James C. Griffith to pay for his board and maintenance. In
Curry v. Curry, 114 Pa. S. R. 367, a very recent case, it was
held that in all cases, except that of parent and child, there
must be evidence, other than relationship, to show that the
creation of a debt under such circumstances was not intended.
The rule would seem to be that, while relationship, other than
that of parent and child, does not per se rebut the presump-

tion of a promise to pay under such circumstances, yet it may, with the aid of other evidence, be sufficient to rebut it: Horton's Appeal, 94 Pa. 62; McConnell's Appeal, 97 Ib. 31; Welch's Appeal, 1 Penny. 9; Moyer's Appeal, 112 Pa. 290; Ranninger's Appeal, 118 Pa. 20. In the absence of any evidence whatever to show that the trustee was to board and lodge the cestui que trust at his own expense, and in view of the fact that the cestui que trust had an estate of his own sufficient for that purpose, the mere facts that he resided in the family of the trustee and was cared for by him, and that he was his half brother, are not sufficient to rebut the presumption of an implied contract to pay, and to throw upon the trustee the burden of his support. Nor has the statute of limitations any applicability to this claim. The statute does not run against a continuing cause of action like this: Barclay v. Grove, 21 W. N. C. 202. Nor is the trustee here making any claims for money from the trust estate. His position is simply this: He has paid himself out of the trust estate the debt which the cestui que trust owed him for his maintenance, and now asks credit for the payment in his account. That does not raise any question of the statute of limitations.

"A claim was made before the auditor by the trustee, also, for the board of Miss Clevenger, who was the aunt of James C. Griffith, and who acted in the capacity of nurse and constant attendant upon him for many years, and up to the time of his death. Miss Clevenger had always lived with James C. Griffith and his mother, and devoted her life to taking care of him, he being unable to take care of himself. She was iving with him at his boarding-house in Philadelphia when Andrew J. Griffith became his trustee. Upon the removal of the trustee and cestui que trust to West Pittston, Miss Clevenger accompanied them. She had always been James C. Griffith's nurse, and her attendance upon him seems to have been considered necessary to his health. To have separated him from her would have been to deprive him of the care and solace which he so much required and to which he had always been accustomed. That she accompanied the cestui que trust to his new residence with the trustee in West Pittston by his desire and request, although not expressly proved, may be fairly inferred from all the facts. She was not related by blood to

the trustee, and there is no reason to suppose that he would have made her an inmate of his family except for the necessity of her continued care and attendance upon her nephew, the cestui que trust. No reason is apparent why he should have assumed the burden of her maintenance. The evidence shows that the cestui que trust needed the constant attendance of a nurse, and that he depended altogether upon her for assistance in the commonest offices of his daily life. Indeed it is quite clear that his condition was such that he could not have got along without her, or some other nurse in her place. She was his aunt, had always been devoted to him, and was indispensable to his comfort. The question arises therefore whether, under the circumstances which I have related, the expense incident to her boarding in the family of the trustee should be borne by him, or paid for out of the estate of the cestui que trust. The facts appear to us to give rise fairly to the inference of an understanding and implied contract on the part of James C. Griffith, that the expense incident to the residence of Miss Clevenger in the family of the trustee—her board—should be paid for out of his estate. She was there for his sole benefit. There is no reason to suppose that she would have been there except for his benefit. Why should the trustee be called upon to bear the expense of the board and lodging of Samuel C. Griffith's nurse when he had an estate sufficient to defray that expense himself? It would, in our opinion, be extremely unjust under the circumstances, to refuse to credit the trustee with the expense he incurred in boarding Miss Clevenger while she was engaged in nursing and taking care of James C. Griffith, especially in view of the fact that the only effect of throwing this burden upon the trustee is to increase the distributive share of his estate now claimed by the other distributee. We are therefore of opinion that this credit claimed on behalf of the trustee should have been allowed by the auditor.

" We think the auditor was right in disallowing the claim for a credit of $1,119 for care and nursing bestowed by the trustee upon the cestui que trust. The evidence shows that the care and responsibility of nursing and attendance upon the sick man devolved almost entirely upon Miss Clevenger, and that although the trustee and his family also looked after him

occasionally, the service thus occasionally rendered was not of a character to give rise to any implied contract that they were to be compensated for it.

"We are not able to agree with the conclusion of the learned auditor that the deed of trust confined the trustee in his necessary expenditures 'for the comfortable and proper maintenance and support' of the cestui que trust to the income of the estate.   To put this construction upon the deed is to give it a very narrow and unnecessary construction, a construction not at all demanded by the language of the instrument.   The deed does indeed authorize the trustee to collect the rents, issues and profits of all the property of whatever kind, and to collect all outstanding claims and debts due to James C. Griffith, and to invest and reinvest the same at his pleasure, and then proceeds to say, that the trustee 'after deducting his reasonable costs and charges shall pay to the said James C. Griffith, each and every year, as often as he may need the same, such sum or sums as may be necessary, in the judgment of the trustee, for the comfortable and proper maintenance and support of the said James C. Griffith, and invest the residue that may be in his hands, at such times and in such sums, and in such manner, as, in his judgment, may be most advantageous for the said James C. Griffith.'   It must be observed that the deed does not say, either expressly or by any necessary implication, that the sums to be paid for the support of James C. Griffith are to be confined to the income of the estate, or that they are to be paid exclusively out of the income. It would have been very easy to have said that if it was intended.   But that is not the meaning of the deed by any grammatical construction which can be fairly put upon it. The language is simply, in effect, that the trustee shall collect everything due and coming to the estate, invest it at his pleasure and pay what is necessary for the comfortable support of the cestui que trust.   But it is nowhere said that the payments shall be out of the income exclusively, nor is that the natural and plain meaning of the instrument.   If the allowances therefor necessarily exceeded the income they were not, on that account, in contravention of the deed.   Such as they were, they seem to have been entirely necessary and proper for Mr. Griffith in the circumstances in which he was placed, and no

complaint has been made that they were not. The argument against this construction, founded on the provision in the deed that the property in case of his decease should be disposed of in accordance with his will, or go to his heirs, has little force. It amounted to a mere direction that what might then remain of the estate should be disposed of in that manner. We are, therefore, of the opinion that there is nothing in this point which prevents our making to the trustee the allowances which are justly and reasonably due to him.

"The calculation of interest, we think, was erroneous. It seems to have been calculated without reference to the disbursements made by the trustee. Now, whether interest is chargeable to a trustee, depends upon whether he has had in his hands money which was invested, or which it was his duty to have invested, or which he has himself used. A reasonable time is always allowed to a trustee in which to make his investments. If there is no balance of income in hand, there is nothing to invest, and he is not liable for interest. The trustee ought not to have been charged with interest from the date of the receipt of moneys, but only from a reasonable time elapsed thereafter, and only upon balances of cash unnecessarily kept in hand. A trust for the support of and maintenance of a cestui que trust necessarily implies that a sufficient amount of cash is to be kept on hand to supply the current wants and expenses of the cestui que trust from time to time. Unless the trustee keeps a balance of cash on hand disproportioned to the current expenses of the trust, he is not chargeable with interest, nor is he chargeable with interest on small balances on hand which cannot readily be profitably invested: Selleck's Appeal, 16 W. N. C. 370. In order to ascertain on what amounts interest is chargeable, it must be determined what balances were unnecessarily kept on hand from time to time. These balances are to be ascertained, of course, by reference to the disbursements as well as the receipts. If balances over and beyond the cash necessary to be kept in hand for the liquidation of the current expenditures are kept on hand an unreasonable length of time without being invested by the trustee, he is chargeable with interest on such balances, otherwise not. In other words, if an estate has not yielded

interest a trustee is not chargeable with interest, unless he has negligently omitted to invest or has used the money himself.

We see no reason to doubt that the commissions allowed by the auditor were proper. Five per cent is the usual allowance in such cases, and that the auditor has allowed in this case. We agree with him that no such mismanagement of the estate by the trustee has been shown as to justify a denial of the usual commissions. The exceptions filed on behalf of the accountant, numbered respectively Nos. 3, 4, 5 and 7, are sustained. The remaining exceptions filed on behalf of the accountant are dismissed.

" The exceptions filed on behalf of Mrs. Nagle are dismissed.

" It is now ordered that the report and account be referred back to the auditor, with instructions to restate the account in accordance with the principles laid down in this decision."

The final decree of distribution of April 18, 1891, was made conformably thereto.

Mary A. G. Nagle appealed.

*Error assigned* was the dismissal of the exceptions as above, quoting them.

*B. Frank Clapp* and *David W. Sellers*, for appellant.

*William W. Wiltbank, Theodore A. Tack* with him, for appellee.

PER CURIAM, January 25, 1892.

This decree is affirmed upon the opinion of the learned judge of the court below, and the appeal dismissed at the costs of the appellant.